1997 ME 3

**Dayle JOHNSON**

v.

**ALLSTATE INSURANCE COMPANY**

v.

**Peter McMANUS and Agnes McManus.**

Supreme Judicial Court of Maine.

Argued Oct. 8, 1996.

Decided Jan. 6, 1997.

Paul F. Macri (orally), Daniel G. Kagan, Berman & Simmons, P.A., Lewiston, for Dayle Johnson.

Thomas J. Connolly (orally) Portland, for Agnes McManus.

Catherine R. Connors (orally), Louise Thomas, Pierce Atwood, Portland, for Allstate Ins. Co.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Plaintiff, Dayle Johnson, commenced a "reach and apply" action [1] in Superior Court against defendant, Allstate Insurance Company ("Allstate"), to recover insurance proceeds to satisfy a judgment against Agnes McManus for personal injuries. After Allstate removed the action to the federal court, the United States District Court, District of Maine (*Hornby, J.*) certified the following question, pursuant to 4 M.R.S.A. § 57 (1989) and M.R.Civ.P. 76B, for our instructions concerning matters of state law:

As a matter of Maine law, with respect to Allstate's 1983–85 homeowner's insurance policy # AU418, is there coverage for one named insured (Agnes McManus) for damages arising out of criminal child abuse by another named insured (Peter J. McManus), where the allegation against the first insured is negligence in allowing the abuse to occur and where the policy excludes coverage for injury "intentionally caused by *an* insured person"?

[¶ 2] The factual and procedural history, as certified to this Court, may be summarized as follows: Plaintiff's grandfather, Peter McManus, sexually abused plaintiff over a period of eleven years beginning in 1978 when plaintiff was five years old. These acts of sexual abuse occurred in various rooms of the home of Peter and Agnes McManus. Agnes McManus, plaintiff's grandmother, babysat plaintiff in the McManus home while plaintiff's mother was working. In 1990, Peter McManus was convicted of gross sexual misconduct.

[¶ 3] Plaintiff filed suit against Peter and Agnes McManus in the Superior Court. She alleged intentional and negligent infliction of emotional distress, battery, and punitive damages against Peter McManus. With respect to Agnes McManus, she proceeded only on a theory of negligence. She alleged that Agnes McManus knew or should have known that the acts of Peter McManus would cause emotional distress; that she allowed his actions to "proceed forward"; and that she further inflicted emotional distress by "blaming what transpired" on plaintiff, by calling plaintiff names, and by "verbally admonishing and degrading" her.

[¶ 4] Plaintiff and the McManuses entered into a stipulation whereby Agnes McManus acknowledged liability on all counts of the amended complaint that pertained to her. The Superior Court entered a judgment awarding plaintiff $475,000.00 in compensatory damages for "severe emotional distress as a direct and proximate result of the conduct of the defendants." The court's judgment was based in part on its finding that "Agnes McManus'[s] actions and omissions giving rise to liability were contemporaneous with Defendant Peter McManus'[s] and contributed in substantial part to the overall damages Plaintiff suffered."

[¶ 5] Plaintiff filed the present action in the Superior Court seeking to collect her judgment against Agnes McManus from an Allstate policy of homeowner's insurance issued to Peter and Agnes McManus. Allstate removed the suit to the federal court and filed a third-party complaint against Peter and Agnes McManus. Federal jurisdiction was based on diversity of citizenship. The matter was heard on cross motions for a judgment on a stipulated record. The United States District Court issued an order in which it found no coverage and entered a judgment for Allstate. Acknowledging that the "question was very close under Maine precedents" the District Court granted plaintiff's request for certification. The court based its denial of coverage partly on public

---

1. Title 24–A 2904 (1990) provides in part:
   Whenever any person ... recovers a final judgment against any other person for any loss or damage specified In section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money ...

policy grounds, relying on *Perreault v. Maine Bonding & Casualty*, 568 A.2d 1100, 1101 (Me.1990) in which we stated that:

> Homeowner's coverage for criminal sexual abuse of children is undoubtedly outside the contemplation of the parties to the insurance contract; indeed, "'[t]he average person purchasing homeowner's insurance would cringe at the very suggestion that [the person] was paying for such coverage. And certainly [the person] would not want to share that type of risk with other homeowner's policyholders.'"

Because we find that the plain language of the intentional act exclusion bars coverage, we need not determine whether the public policy concerns expressed in *Perreault* apply to a negligence claim against an insured other than the perpetrator of the sexual abuse.

[¶ 6] The Allstate policy excludes coverage for bodily injury or property damage intentionally caused by "an insured person." The issue presented by the certified question is whether the exclusion for intentional acts bars coverage for damages negligently caused by one insured when the damages are the same as the damages caused by the intentional acts of another insured.[2] Based on the language of the policy, we hold that by excluding coverage for damages intentionally caused by "an insured person," Allstate unambiguously excluded coverage for damages intentionally caused by *any* insured person under the policy. "An" is an indefinite article routinely used in the sense of "any" in referring to more than one individual object. *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734, 754 (1989) ("relying upon a correct usage of the English language"). Peter McManus is "an insured person" under the policy and the damages that plaintiff seeks to recover were intentionally caused by his criminal acts. Plaintiff makes no allegation that Agnes McManus's negligence caused damages separate from those caused by her husband.

[¶ 7] Our conclusion is consistent with the common usage of the English language, as well as the overwhelming majority of appellate opinions from other jurisdictions. "Adherence to a correct usage of the English language in insurance contract construction promotes a uniform, reliable, and reasonable foundation upon which policyholders and insurers may rely when they enter into a contractual agreement." *Id.* Other courts have equated "an insured" with "any insured" in exclusionary clauses and have held that excluded conduct on the part of one insured bars coverage for each insured under the policy. *See e.g. Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 454 (9th Cir.1988); *Allstate Ins. Co. v. McCranie*, 716 F.Supp. 1440, 1447–49 (S.D.Fla.1989); *Allstate Ins. Co. v. Foster*, 693 F.Supp. 886, 889 (D.Nev.1988); *Allstate Ins. Co. v. Roelfs*, 698 F.Supp. 815, 822 (D.Alaska 1987); *State Farm Fire and Cas. Co. v. Davis*, 612 So.2d 458, 466 (Ala. 1993); *Allstate Ins. Co. v. Condon*, 198 Cal. App.3d 148, 243 Cal.Rptr. 623 (1988); *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1062–1063 (Colo.1994); *Allstate Ins. Co. v. Smiley*, 276 Ill.App.3d 971, 213 Ill.Dec. 698, 705, 659 N.E.2d 1345, 1352 (1995); *Travelers Ins. Co. v. Blanchard*, 431 So.2d 913, 914–915 (La. App.1983); *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734, 754 (1989); *Allstate Ins. Co. v. Stamp*, 134 N.H. 59, 588 A.2d 363, 365 (1991); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 581 N.Y.S.2d 142, 148, 589 N.E.2d 365, 371 (1992); and *Contra Taryn E.F., by Grunewald v. Joshua M.C.*, 178 Wis.2d 719, 505 N.W.2d 418, 421 (App. 1993).

[¶ 8] Beyond any question of ambiguity in the wording of the exclusion, plaintiff argues in the alternative that a "severability clause" found elsewhere in the policy either negates the effect of the exclusion or produces an ambiguity. Plaintiff relies on the following policy language:

> 4. Our Limits of Liability.
>
> This insurance applies separately to each insured person. Regardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under the Family Liability Protection coverage for damages resulting from

---

**2.** In *Perreault v. Maine Bonding & Casualty*, 568 A.2d 1100, 1101 (Me.1990), we held "as a matter of law that any injury produced by a criminal act of sexual abuse against a child is 'injury—expected or intended by the insured' within the meaning of the homeowner's exclusion."

one loss will not exceed the limit shown on the declarations page.

Plaintiff contends that the quoted language is a "severability clause" that mandates independent consideration of each insured's conduct in determining coverage. Plaintiff argues that, at a minimum, the clause renders ambiguous the intentional act exclusion as it applies to insured persons who have not intentionally caused a plaintiff's damages, and that ambiguous exclusionary clauses will be construed against the insurer. Allstate counters with the argument that the language in question is a "limitation of liability clause" as opposed to a "severability clause." Assuming, without deciding, that the clause creates separate interests under the insurance policy rather than merely stating the limits of liability, we conclude that plaintiff overstates the significance of a "severability clause." An unambiguous exclusion is not negated by a severability clause. *United Fire & Casualty Co. v. Reeder,* 9 F.3d 15, 18 (5th Cir.1993); *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748, 752 n. 6 (Colo.1990); *State Farm Fire & Cas. Co. v. Guccione,* 171 Ill. App.3d 404, 121 Ill.Dec. 537, 538–39, 525 N.E.2d 595, 596–97 (1988); *American Family Mut. Ins. Co. v. Moore,* 912 S.W.2d 531, 534–535 (Mo.App.1995); *Northwest G.F. Mut. Ins. Co. v. Norgard,* 518 N.W.2d 179, 183–84 (N.D.1994); *Taryn E.F., by Grunewald v. Joshua M.C.,* 178 Wis.2d 719, 505 N.W.2d 418, 420–21 (App.1993); *and* Alan Windt, *Insurance Claims & Disputes,* § 11.08 at 234 (3 ed. 1995).

[¶ 9] The primary case relied on by plaintiff, *Worcester Mut. Ins. Co. v. Marnell,* 398 Mass. 240, 496 N.E.2d 158 (1986), demonstrates the defect in plaintiff's argument. The Marnells sought coverage under their homeowner's policy for wrongful death damages arising from negligent supervision of their underage son. The son, also an insured under the policy, left a party at the Marnell house in a drunken state and crashed his car, resulting in the death of a passenger. The policy excluded coverage for bodily injury arising out of the use of a motor vehicle owned or operated by *any* insured person. The court ruled that the severability clause mandated coverage for the Marnells's negligent supervision, despite the plain language of the exclusion precluding it. To reach this result the *Marnell* court acknowledged that it rendered the term "any" in the exclusionary clause meaningless. *Id.* at 245, 496 N.E.2d 158. Because this approach ignores and does violence to the plain language of the insurance contract, we decline to follow it. Although ambiguous language is to be construed against the insurer, we will not rewrite the contract when the language of the policy is unambiguous. "The terms of a policy cannot be enlarged or diminished by judicial construction." *Limberis v. Aetna Casualty and Surety Company,* 263 A.2d 83, 86 (Me.1970).

[¶ 10] We answer the certified question in the negative.

