2003 ME 77

Sally **KORHONEN** o/b/o her daughter

v.

**ALLSTATE INSURANCE COMPANY**

Supreme Judicial Court of Maine.

Argued: Nov. 13, 2002.
Decided: June 16, 2003.

Edward Rabasco Jr., (orally), Gosselin, Dubord & Rabasco, P.A., Lewiston, for plaintiff.

Martica S. Douglas, James E. Fortin, (orally), Douglas, Denham, Buccina & Ernst, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Sally Korhonen, on behalf of her minor daughter, appeals from the summary judgment granted in favor of Allstate Insurance Company by the Superior Court (Androscoggin County, *Delahanty, J.*) in her reach and apply action brought against Allstate. She contends that the Superior Court erred in interpreting the Allstate homeowners policy as denying coverage for injuries caused by Margaret Korhonen. We agree as to two of three counts of the complaint brought by Sally against Margaret and, accordingly, vacate the judgment in part.

## I. FACTS AND PROCEDURAL HISTORY

[¶ 2] Sally's minor daughter was sexually abused by her relative, William Korhonen, Jr., at a Christmas party he and his wife, Margaret, hosted for several teenage girls

at their home in December 1997.[1] The child was thirteen years old at the time of the incident. William was subsequently prosecuted, and he pleaded guilty to a charge of unlawful sexual contact, Class B, 17–A M.R.S.A. § 255(1)(A), (3) (Supp. 2002), a second charge of unlawful sexual contact, Class C, 17–A M.R.S.A. § 255(1) (Supp.2002), and seven charges of furnishing or allowing consumption of liquor by minors, Class D, 28–A M.R.S.A. § 2081(1)(B) (Supp.2002).

[¶ 3] Sally filed a civil suit against William and Margaret following William's criminal convictions. As to Margaret, the complaint alleged in Count III that on December 21, 1997, the day on which William committed the sexual abuse, both William and Margaret "negligently supervised" the child who "accessed the alcohol [in their home] and became extremely ill as a result." The complaint asserted that the child "sustained physical and emotional injuries in addition to the injuries alleged" in the counts asserting the sexual abuse of the child by William. Count IV of the complaint alleged that beginning on January 27, 1998, and continuing to the time Sally filed the complaint, Margaret negligently inflicted emotional distress, first, by failing to learn that William had, in fact, engaged in sexual acts with Sally's daughter, and second, by verbally blaming, admonishing, and degrading the daughter and accusing her of lying. Count V of the complaint alleged an earlier incident of negligent supervision regarding alcohol occurring on October 18, 1997, that was nearly identical to the December 21 incident asserted in Count III. By agreement of the parties, the Superior Court (*Studstrup, J.*) entered judgments against William and Margaret for damages each caused to the child.[2]

[¶ 4] Sally subsequently filed this "reach and apply" suit against Allstate to collect the judgment obtained against Margaret, pursuant to 24–A M.R.S.A. § 2904 (2000).[3] Sally contended that Allstate had a duty to indemnify Margaret under the provisions of the Allstate policy. Allstate had previously denied William and Margaret's request to provide them with a defense and indemnification for any damages resulting from their actions in the underlying action, asserting that its policy did not cover damages resulting from intentional or criminal acts of "any insured person."

[¶ 5] The Allstate policy provides for family liability protection with sixteen sec-

---

1. It is not clear from the record whether William is the child's uncle or grandfather.

2. Judgments were entered against William for $220,000, and against Margaret for $115,000. The judgment entered against Margaret awarded $20,000 in damages under Count III, $75,000 in damages under Count IV, and $20,000 in damages under Count V, together with pre and post judgment interest and costs.

3. Section 2904 provides, in part:
§ 2904. Judgment creditor may have insurance; exceptions
Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage. The insurer shall have the right to invoke the defenses described in this section in the proceedings. None of the provisions of this paragraph and section 2903 shall apply:
. . . .
6. Fraud or collusion. When there is fraud or collusion between the judgment creditor and the insured.
24–A M.R.S.A. § 2904 (2000).

tions defining losses that are not covered, the first of which is as follows:

1.  We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the *intentional or criminal acts* or omissions of, *any* insured person. This exclusion applies even if:

  a) such insured person lacks the mental capacity to govern his or her conduct;

  b) such bodily injury or property damage is of a different kind or degree than that intended or reasonably expected; or

  c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

(emphasis added; emphasis in original not included).

[¶ 6] The parties filed cross motions for summary judgment pursuant to M.R. Civ. P. 56. The parties' statements of material facts focused exclusively on the policy's provision excluding coverage for injuries resulting from intentional or criminal acts, and did not address the circumstances surrounding Margaret's alleged negligence. The Superior Court granted Allstate a summary judgment, finding the policy's use of "any insured person" was dispositive in light of our decisions in *Johnson v. Allstate Insurance Co.*, 1997 ME 3, 687 A.2d 642, and *Hanover Insurance Co. v. Crocker*, 1997 ME 19, 688 A.2d 928. Sally appeals from the summary judgment.

## II.  DISCUSSION

[¶ 7] Sally concedes that Allstate is not liable for William's intentional, criminal ac-

tions. She instead contends that Margaret's separate negligence resulted in separate injuries to her daughter, distinct from the injuries caused by William's intentional, criminal acts. The sole issue on appeal is whether Allstate's policy precludes coverage for the injuries alleged to have been separately caused by Margaret's actions not related to the sexual assault.

[¶ 8] The entry of a summary judgment is reviewed "in the light most favorable to the party against whom the judgment was entered" for errors of law. *Royal Ins. Co. v. Pinette*, 2000 ME 155, ¶ 4, 756 A.2d 520, 523 (internal quotation omitted). If the evidence demonstrates no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law, the summary judgment will be affirmed. *Id.* The parties, here, agree that there are no genuine issues of material fact; therefore, the Superior Court's entry of a summary judgment will be reviewed solely for errors of law.

[¶ 9] An insurance policy is a contract, which provides terms delineating the categories of liabilities the insurer commits itself to cover and the extent of coverage available for liabilities covered. *See, e.g., Johnson*, 1997 ME 3, ¶¶ 6–7, 687 A.2d at 644. The interpretation of an insurance contract is a matter of law that is reviewed de novo. *Pelkey v. Gen. Elec. Capital Assurance Co.*, 2002 ME 142, ¶ 10, 804 A.2d 385, 387. "The language of a contract of insurance is ambiguous if it is reasonably susceptible of different interpretations," *Apgar v. Commercial Union Ins. Co.*, 683 A.2d 497, 498 (Me.1996) (internal quotation omitted), and, if so, the contract will be strictly construed to resolve ambiguities in favor of coverage, *Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.*, 584 A.2d 608, 609 (Me.1990). Whether a contract for insurance is ambiguous is a question of law that is reviewed

de novo. *Pinette*, 2000 ME 155, ¶ 4, 756 A.2d at 523.

■ [¶ 10] The reach and apply statute, 24-A M.R.S.A. § 2904, provides a cause of action to a final judgment creditor of any insured judgment debtor to reach and apply the debtor's insurance coverage if (1) the judgment debtor was insured against such liability when the right of action accrued, and (2) the insurer was given notice of such accident, injury, or damage before the recovery of the judgment. *Marston v. Merchs. Mut. Ins. Co.*, 319 A.2d 111, 113 (Me.1974). It is undisputed that Allstate had notice of the injuries alleged in the complaint brought by Sally against William and Margaret. Sally asserts that the Allstate policy provides coverage for the injuries caused by Margaret's actions and seeks to recover pursuant to the judgment obtained against Margaret.

[¶ 11] *Marston* established that

where there is no allegation in the complaint which could establish liability within the coverage of the policy and the judgment is clearly based on allegations as to liability without the coverage of the policy, there is no liability on the insurer in a suit by the injured person for recourse to the policy.

*Id.* at 114. Therefore, the underlying complaint from which the judgment emanates is examined to determine whether there is any allegation that, if proven, would estab-lish liability within the coverage of the Allstate policy.

A. Negligent Supervision of a Child

■ [¶ 12] Counts III and V of the complaint allege Margaret and William's negligent supervision of the child on two separate occasions, which resulted in the child accessing alcohol and becoming extremely ill as a result.[4] Count III asserts that the child "sustained physical and emotional injuries in addition to the injuries alleged" in the counts asserting the sexual abuse of the child by William. Count V asserts that the child "suffered emotional distress and damages."

[¶ 13] The Superior Court relied squarely on the holding in *Johnson*, 1997 ME 3, 687 A.2d 642, when it granted a summary judgment after concluding that the phrase, "the intentional or criminal acts or omissions of *any* insured person," in William and Margaret's policy did not require Allstate to indemnify for Margaret's negligence. In *Johnson*, policy language that excluded coverage for injuries arising from the intentional act of "any insured" was held to also bar coverage for injuries in connection with the negligence of "an insured" when the injuries are not separate from those caused by "any insured." *Id.* ¶ 6, 687 A.2d at 644 (involving a grandfather who sexually abused the plaintiff for eleven years while his wife, the grand-

---

4. The plaintiff's complaint labeled these counts as claims for "negligent supervision," although they do not concern the type of duty traditionally associated with the tort of negligent supervision. Negligent supervision is generally considered in the context of the duty an employer might owe for the conduct of an employee, and is a duty that we have not previously recognized. *See Mahar v. StoneWood Transp.*, 2003 ME 63, ¶ 10, 823 A.2d 540, 543; *Napieralski v. Unity Church of Greater Portland*, 2002 ME 108, ¶ 1, 802 A.2d 391, 392. The gravaman of counts III and V may be a breach of the "duty of one who takes charge of another who is helpless." RESTATEMENT (SECOND) OF TORTS § 324(a) cmt. b (1965) (recognizing that the section applies to a person "who takes charge of another who by reason of his youth is incapable of caring for himself"). Once Margaret agreed to invite the thirteen-year-old child to her home, knowing there was alcohol in the home, she may have had a duty to conform to the legal standard of reasonable conduct in light of the apparent risk. *See Feeney v. Hanover Ins. Co.*, 1998 ME 124, ¶ 11, 711 A.2d 1296, 1299.

mother, babysat the plaintiff). In *Crocker*, 1997 ME 19, 688 A.2d 928, the opposite result was reached. There, because the policy only excluded coverage for injuries caused by the intentional acts of "the insured," coverage was available for the negligent acts of a coinsured resulting in the same injuries. *Id.* ¶ 7, 688 A.2d at 931. The basis for the opposite outcomes reached in *Johnson* and *Crocker* was recently explained: "Because the negligent and intentional actors in *Crocker* and *Johnson* were different, even though the injuries were the same, coverage for the negligence turned upon the policy language." *Pinette*, 2000 ME 155, ¶ 10, 756 A.2d at 524.[5]

[¶ 14] The two counts involving negligent supervision of a child assert injuries resulting from Margaret's negligence that are separate and distinct from the injuries resulting from William's intentional and criminal acts. The question of coverage presented under these circumstances does not implicate the public policy concern addressed in *Perreault v. Maine Bonding & Casualty Co.*, 568 A.2d 1100, 1102 (Me. 1990), that "homeowner's coverage for criminal sexual abuse of children is undoubtedly outside the contemplation of the parties to the insurance contract." Although Margaret's negligence occurred in the same home as her husband's intentional and criminal acts, it is not claimed that her negligence facilitated the sexual abuse. There is no recognized public policy that would prohibit insurance coverage for an insured whose negligence caused injuries to a minor child that are distinct from the injuries proximately caused by a coinsured's sexual abuse of the child.

[¶ 15] Unlike the negligence claims against the grandmother in *Johnson* in which the plaintiff did not allege "damages separate from those caused by [the grandfather]," 1997 ME 3, ¶ 6, 687 A.2d at 644, the negligent supervision claims asserted against Margaret here are for injuries that are distinct from those associated with William's intentional and criminal conduct. Because of this fundamental difference, *Johnson* does not compel the conclusion that coverage cannot be available in this action, and a summary judgment should not have been awarded in favor of Allstate on the two counts alleging negligent supervision on this basis.

[¶ 16] However, the Superior Court's analysis and, now, this analysis of Counts III and V are made without the benefit of statements of material fact or an evidentiary record that explicates the specific circumstances of Margaret's failure to care for the child. Allstate's motion for a summary judgment and the parties' statements of material facts focus exclusively on the insurance policy's provision excluding coverage for injuries resulting from intentional or criminal acts and do not address the circumstances surrounding Margaret's actions. It is, therefore, premature to determine whether Margaret did in fact owe a duty that gives rise to liability for the injuries suffered by the child, *see* RESTATEMENT (SECOND) OF TORTS § 324(a) cmt. b (1965) (recognizing a duty of one "who takes charge of another who by reason of his youth is incapable of caring for himself," and that the actor is liable to the other if she fails "to exercise reasonable care to secure the

---

**5.** *See* Daniel G. Kagan, *Insurance Coverage for Victims of Sexual Abuse: A Mixed Message from the Law Court*, 12 Me. B.J. 292 (1997) (stating that "*Johnson v. Allstate Insurance Co., Hanover Insurance Co. v. Crocker*, and most recently, *Cambridge Mutual Fire Insur-* ance Co. v. Perry provide little guidance for future cases in determining when there is coverage [for insureds whose negligence is a factor in causing damage from sexual abuse] and when there is not").

safety of the other while within the actor's charge"), other than to recognize that Counts III and V are sufficient to suggest a duty might have existed. Consequently, it remains to be determined whether Counts III and V of the underlying complaint actually gave rise to a form of tort liability covered by the Allstate policy, as well as whether any statutory defense bars Sally's recovery in this action. *See e.g.,*24-A M.R.S.A. § 2904(6) (stating that a judgment creditor may not succeed against the insurer "[w]hen there is fraud or collusion between the judgment creditor and the insured").[6]

### B. Negligent Infliction of Emotional Distress

■ [¶ 17] In Count IV, Sally alleged that Margaret negligently inflicted emotional distress, first, by failing to learn that William had, in fact, engaged in sexual acts with the child, and second, by verbally blaming, admonishing, and degrading the child and accusing her of lying. As pleaded, Margaret's actions represent intentional conduct because the only possible interpretation of Count IV is that Margaret intended to admonish and degrade the child, the natural object of which is to cause emotional distress. *See Curtis v. Porter,* 2001 ME 158, ¶¶ 10–22, 784 A.2d 18, 22–26 (differentiating between negligent and intentional infliction of emotional distress, and explaining that "[i]n the context of a tort claim, a person acts 'intentionally' if he subjectively wants or subjectively foresees that harm to another will almost certainly result from his actions"). This conclusion is not affected by the question of whether Margaret operated under a

mistaken belief that the child was lying. Maine has not recognized a duty to investigate under these circumstances, and none is suggested by the allegations of the complaint.[7]

[¶ 18] Under the terms of its policy, Allstate had no duty to defend or indemnify Margaret for the allegations in Count IV because the alleged acts were intentional in nature and therefore excluded from coverage. Accordingly, we discern no error in the Superior Court's award of a summary judgment to Allstate as to that portion of the judgment against Margaret resulting from Count IV of the complaint in the underlying action.

### III. CONCLUSION

[¶ 19] Summary judgment was proper as to Count IV of the underlying complaint alleging negligent infliction of emotional distress because the gravaman of the count alleges intentional conduct by Margaret, and liability resulting from intentional conduct is excluded from coverage by Allstate's policy. However, a summary judgment should not have been awarded as to Counts III and V of the underlying complaint because both allege negligent conduct that is separate from the allegations of the sexual assault and, depending upon the actual circumstances, may give rise to a recognized duty. The insurance policy's exclusion of coverage for injuries or damages resulting from intentional or criminal acts or omissions of *"any insured* person" does not preclude coverage for separate injuries or damages caused by the negligence of a coinsured. The *John-*

6. Similarly, we express no opinion on whether the $20,000 in damages on each count is excessive as a matter of law.

7. For Margaret's actions to be negligent infliction of emotional distress, Margaret must

(1) have owed a duty to the child; (2) breached that duty; (3) the child was harmed; and (4) the breach caused the child's harm. *Curtis v. Porter,* 2001 ME 158, ¶ 18, 784 A.2d 18, 25.

*son v. Allstate Insurance Co.* holding does not compel a contrary conclusion.

The entry is:

Summary judgment affirmed as to Count IV of the underlying action; summary judgment vacated as to Counts III and V of the underlying action. Remanded to the Superior Court for further proceedings consistent with this opinion.