2006 ME 88

**TOWN OF WALTHAM**

v.

**PPL MAINE, LLC.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 12, 2006.
Decided: July 21, 2006.

Charles E. Gilbert III, Julie D. Farr, Gilbert & Greif, P.A., Bangor, for plaintiff.

Sidney St.F. Thaxter, David P. Silk, Curtis Thaxter Stevens Broder & Micoleau, L.L.C., Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] This case concerns whether a hydroelectric company that owns a generating plant, a dam, and the flowage rights associated with the dam is liable for municipal property taxes for the submerged land beneath the lake created by the dam when the company does not own the land itself. The Town of Waltham appeals from a summary judgment entered in the Superior Court (Hancock County, *Mead, J.*) in favor of PPL Maine, LLC. The Town contends that PPL is a "person in possession" of the submerged land located in the Town beneath Graham Lake and is liable to the Town for property taxes pursuant to 36 M.R.S. § 553 (2005). The Superior Court did not agree with the Town, and we agree with the Superior Court's analysis. The judgment is affirmed.

## I. BACKGROUND

[¶ 2] In the 1920s, Bangor–Hydro Electric Company built the Graham Lake Dam in Ellsworth. The dam created Graham Lake by flooding the land around the Union River bed, including land in the Town. Bangor–Hydro obtained the rights necessary to flood the land in the Town that is now submerged under Graham Lake. The

submerged land in the Town is not owned by any of the parties, but by other individuals and entities. The Graham Lake Dam is currently the location of the Ellsworth Hydro Project, a hydroelectric generating facility.

[¶ 3] In 1999, PPL's predecessor purchased the Ellsworth Hydro Project from Bangor–Hydro. In this transaction, PPL's predecessor purchased the Graham Lake Dam and the flowage rights associated with it, including the right to flow the portion of the lake located in the Town. The deed from Bangor–Hydro to PPL's predecessor specifically excluded any fee interest in any flowed land that Bangor–Hydro might have owned. Neither PPL's predecessor nor PPL own any real estate in the Town.

[¶ 4] Before the Ellsworth Hydro Project was sold in 1999, the Town taxed Bangor–Hydro on the submerged land, and Bangor–Hydro paid the taxes. When the Town became aware that the generating facility had been sold, it transferred the property tax card into the name of PPL's predecessor. The Town assessed a tax against PPL's predecessor, and later against PPL, on approximately 1235 acres for the 2001, 2002, and 2003 tax years. Neither PPL's predecessor nor PPL paid the tax, and the Town filed an action to collect the tax. The parties filed countermotions for summary judgment, and the court granted PPL's motion. The court found that the facts were not in dispute and that PPL was entitled to judgment because it owned only flowage rights and was not a person in possession of the submerged land. The Town appealed.

## II. DISCUSSION

[¶ 5] "We review a ruling on a motion for summary judgment de novo ...." *Rice v.*

*City of Biddeford,* 2004 ME 128, ¶ 9, 861 A.2d 668, 670. When, as here, the facts are undisputed, we determine whether the moving party was entitled to judgment as a matter of law. *See Sarah G. v. Me. Bonding & Cas. Co.,* 2005 ME 13, ¶ 5, 866 A.2d 835, 837.

[¶ 6] To collect taxes, municipalities are authorized to file suit against the party liable for the taxes. 36 M.R.S. § 1032 (2005). Real estate is taxed "to the owner or person in possession." 36 M.R.S. § 553. For the purposes of taxation, the term "real estate" includes land and the structures affixed to the land. 36 M.R.S. § 551 (2005). The statute also provides that land "with the water power ... appertaining thereto" is included in the definition of real estate. *Id.*

[¶ 7] The Town agrees that it is not assessing PPL's flowage rights,[1] and it acknowledges that PPL does not own any land in the Town. The Town's sole claim to taxes from PPL is based on PPL's easement over the submerged land located within the Town. The Town contends that the easement makes PPL a person in possession of the submerged land because the flooding prevents any other use of the land.

[¶ 8] We have not determined whether a holder of flowage rights is liable for property taxes on the submerged land as a "person in possession" of the land pursuant to section 553. In making the determination we begin with a look at the nature of flowage rights.

[¶ 9] Flowage rights are the right to operate a dam and flood the upstream land. *Trask v. Pub. Utils. Comm'n,* 1999

---

1. PPL asserts that the Town of Ellsworth, where the Graham Lake Dam is located, assesses a tax for the dam and includes the water and riparian rights as a component of the value of the dam.

ME 93, ¶ 12, 731 A.2d 430, 433. "Flowage rights 'are in the nature of an easement appurtenant, benefiting the mill site as dominant tenement and burdening the upstream landowners, collectively, as servient tenement.'" *Id.* (footnote omitted) (quoting *Dorey v. Estate of Spicer,* 1998 ME 202, ¶ 12, 715 A.2d 182, 185–86). "An easement appurtenant is a non-possessory interest in the owner of one parcel of land, by reason of such ownership, to use the land of another for a specific purpose." *Great Cove Boat Club v. Bureau of Pub. Lands,* 672 A.2d 91, 94 (Me.1996).

[¶ 10] Thus, PPL, by virtue of its ownership of the flowage rights, has a right pertaining to the flooded land of the upstream landowners, which is in the nature of an easement appurtenant that benefits the dam in Ellsworth and burdens the submerged land. Furthermore, the easement appurtenant is a non-possessory interest in the submerged land. The owners of the submerged land may put the land to any use that is not detrimental to the lake. *See Bean v. Cent. Me. Power Co.,* 133 Me. 9, 28, 173 A. 498, 506 (1934) (giving examples of uses of submerged land such as sinking a pier or driving a piling).

[¶ 11] Cases relied upon by the Town, such as *Susquehanna Power Co. v. State Tax Comm'n of Md.,* 283 U.S. 291, 51 S.Ct. 434, 75 L.Ed. 1042 (1931) are not on point because the issue here is the taxation of submerged land that is *not* owned by the taxpayer. In *Susquehanna Power,* the Supreme Court affirmed Maryland's ability to assess taxes on the power company for land that it had purchased and subsequently flooded. *Id.* at 292, 297. There the power company owned the submerged land, and its ownership was not at issue. Likewise, the ability of a municipality to assess taxes on the owner of submerged land is not at issue in this case.

[¶ 1] Because PPL's interest in the submerged land located in the Town is a non-possessory interest, the Town cannot impose a property tax upon PPL as a person in possession of the land.

The entry is:

Judgment affirmed.